UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLRIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | / |
| ex rel, | / |
| ALAN M. FREEDMAN, MD | / |
| | / |
| Plaintiff, | / |
| v. | / |
| | / |
| JOSE SUAREZ-HOYOS, MD | / |
| JOSE SUAREZ-HOYOS, MD, PA | / |
| INDEPENDENT CLINICAL LABORATORY | / |
| dba TAMPA PATHOLOGY LABORATORY | / |
| | / |
| STEVEN JAY WASSERMAN, MD | / |
| STEVEN JAY WASSERMAN, MD, PA | / |
| DERMATOLOGY INSTITUTE OF VENICE | / |
| | / |
| Defendants. | / |

CASE NO. 8:04-CV-933-T-24MSS

UNDER SEAL

## COMPLAINT FOR DAMAGES AND OTHER RELIEF
## UNDER THE *QUI TAM* PROVISIONS OF THE FALSE CLAIMS ACT

### AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.       This is an action brought on behalf of the UNITED STATES OF

AMERICA, to recover treble damages and civil penalties against Defendants,

pursuant to the Federal False Claims Act, 31 U.S.C. Sections 3729-3732, as amended

("The False Claims Act").

2.     Plaintiff Freedman's *qui tam* action, to recover treble damages and civil penalties on behalf of the UNITED STATES OF AMERICA arises from Plaintiff's information, personal experience and belief, set forth more specifically below, that Defendants have submitted and/or caused to be submitted false and fraudulent claims for Medicare reimbursement to the United States Department of Health and Human Services (DHHS), acting by and through the Health Care Financing Administration (HCFA) and the Centers for Medicare and Medicaid Services (CMS).

### JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Section 131 and 31 U.S.C. Sections 3730(b) and 3732(a) which specifically confer jurisdiction on this Court for actions brought pursuant to The False Claims Act.

4.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. section 3732(a) which authorizes nationwide service of process.  Defendants can be found in, reside in, or have transacted business in the Middle District of Florida.

5.     Venue is proper in this District pursuant to 31 U.S.C. Section 3732(a) because the defendants can be found in, resides in, or has transacted business in the Middle District of Florida, and the alleged acts occurred in this District.

6.      No allegation set forth in this Compliant is based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a Congressional, administrative or General Accounting Office report, hearing audit, or investigation, or from the news media.

7.      Plaintiff FREEDMAN has direct and independent knowledge, within the meaning of 31 U.S.C. Section 3730(e)(4)(B), of the information on which the allegations set forth in this Complaint are based.

## THE PARTIES

8.      Plaintiff Alan Freedman (Relator) is a resident of Hillsborough County, Florida, and brings this action on behalf of himself and the UNITED STATES OF AMERICA. The Relator has personal knowledge of facts supporting that the false statements, records and/or claims were presented or were caused to be presented to the Government by and for the Defendants named herein through fraudulent practices.

9.      From on or about August 2000 through July 2003, Relator was employed by Defendants, Jose Suarez Hoyos, MD and Jose Suarez Hoyos MD, PA, at his business, Independent Clinical Laboratories dba Tampa Pathology Laboratories as a pathologist at the Tampa office located at 6515 N. Armenia Ave, Tampa, Florida 33604.

10.      Defendants, Jose Suarez Hoyos MD,  (hereinafter SUAREZ MD) is a

physician, and Jose Suarez Hoyos MD, PA (hereinafter SUAREZ PA) is a

professional corporation owned and operated by SUAREZ MD who resides in

Hillsborough and Hernando Counties, Florida, and who was licensed to practice

Medicine in the State of Florida at all times relevant to  this Complaint.  HOYOS MD

and HOYOS PA have as a principle place of business 6515 N. Armenia Ave., Tampa,

Florida 33604.


11.      Defendant Independent Clinical Laboratory dba Tampa Pathology

Laboratory (hereinafter TPL) is a Florida Corporation, doing business in

Hillsborough County Florida at 6515 N. Armenia Ave, Tampa, Florida 33604.

Hereinafter HOYOS MD, HOYOS PA, and TPL shall be collectively referred to as

SUAREZ.


12.      Defendant Steven Jay Wasserman, MD, (hereinafter WASSERMAN MD)

is a physician licensed to practice medicine in Florida doing business at 1111

Avenida Del Circo, Venice, Florida 34285 at all times relevant to this Complaint.


13.      Defendant Steven Jay Wasserman, MD, PA (hereinafter WASSERMAN

PA)  is a professional services corporation doing business at 1111 Avenida Del Circo,

Venice, Florida 34285 at all times relevant to this Complaint.

14.     Defendant Dermatology Institute of Venice (hereinafter DIV) is a Florida corporation doing business at 1111 Avenida Del Circo, Venice, Florida 34285 at all times relevant to this Complaint.  (Hereinafter, WASSERMAN MD, WASSERMAN PA, AND DIV are referred to collectively as WASSERMAN)

## *QUI TAM* PROCEDURAL COMPLIANCE

15.     Pursuant to 31 U.S.C. Section 3730(b)(2), this *qui tam* Complaint must be filed *in camera* and under seal for a period of at least sixty (60) days and shall not be served on Defendant until the Court so orders.

16.     Pursuant to 31 U.S.C. Section 3730(b)(2), the United States Government may elect to intervene and proceed with this action within sixty (60) days of receipt of this Complaint and a statement of the material evidence and information in this action.

17.     Pursuant to 31 U.S.C. section 3730(b)(2), Relator has provided a copy of the Complaint and statement of the material evidence and information to the United States Attorney for the Middle District of Florida and to the Attorney General of the United States.  The statement of the material evidence and information supports Relator's information, experience and belief concerning the allegations of this Complaint.

Freedman Qui Tam Complaint                      5

## THE MEDICARE PROGRAM

18.       The UNITED STATES OF AMERICA, through the Department of Health

and Human Services (DHHS) administers the Medicare Program (MEDICARE)

under title XVIII of the Social Security Act, 42 U.S.C. sections 1395-1395ccc.

MEDICARE is a federally subsidized health insurance system for disabled persons

and persons over the age of sixty-five.  Part A of the Medicare Program, 42 U.S.C.

sections 1395c – 1395i-2, provides payments for basic hospitalization insurance costs.

Part B of the Medicare Program, 42 U.S.C. sections 1395j – 1395 ww, provides

payments for physician services and certain medical and other health services. The

expenses of medically necessary treatment and services are covered by either

Medicare Part A or Part B, provided that the individual meets the qualifications for

enrollment in MEDICARE.


19.       HCFA and its successor, CMS, require that each and every individual

providing goods or services to Medicare beneficiaries, or to the beneficiaries of any

other Federally funded health care program, must obtain a Unique Physician

Identification Number (UPIN). This number is obtained by way of an application to

HCFA or CMS, and each physician, non-physician practitioner and group is assigned

a unique number so as to be able to identify and track referring or ordering physicians

on Medicare claims.

20.     The Medicare program has clear and strictly defined provisions for the reimbursement of physicians and express preclusions against financial arrangements that allow physicians to receive remuneration or benefits directly or indirectly, in cash or in kind, overtly and covertly for services provided by others or for goods and services received or provided that to not conform to fair market value provisions or which are not protected by safe harbor provisions.

21.     The Medicare program has clear and strictly defined provisions for the submission of claims for services provided by physicians, said provisions relating expressly to fraudulent actions, including, but not limited to preclusion for the submission of claims by a physician for services rendered by another physician as a direct or indirect means by which to arrange for payment to one or both of the physicians for undocumented services of one of the physicians and as a form of kickback.

22.     At all times relevant to this Complaint, it was a violation of federal law (the Medicare/Medicaid Anti-Kickback Act, an amendment to the Social Security Act, and codified at 42 U.S.C. section 1320a-7b(a)(1) ), to knowingly and willfully make or cause to me made any false statement or representation of a material fact in any application for any benefit or payment under a federal health care program.

23.      At all times relevant to this Complaint, 42 U.S.C. section 1320a 7b(f)

defined the term "Federal health care program" to mean in significant part "any plan

or program that provides health benefits, whether directly, through insurance, or

otherwise, which is funded directly, in whole or in part, by the United States

Government." This includes the Medicare Program.

24.      At all times relevant to this Complaint, it was a violation of federal law,

(the Medicare/Medicaid Anti-Kickback Act, an amendment to the Social Security

Act, and codified at 42 U.S.C. section 1320a-7b(a)(2) ), to knowingly and willfully

make or cause to be made any false statement or representation of material fact for

use in determining rights to a benefit or payment under Medicare.

25.      At all times relevant to this Complaint, it was a misdemeanor offence

under federal law to make or cause to be made any false statement or representation

of a material fact in any application for any benefit or payment under a Federal health

care program or in determining rights to such benefit or payment pursuant to 42

U.S.C. section 1320a-7b(a).

26.      At all times relevant to this Complaint, the Secretary of DHHS could

impose civil penalties against individuals and entities for fraud and abuse related to

health care.  The actions subject to imposition of a civil penalty under U.S.C.A.

section 1320a-7a(1) are in pertinent part as follows:

"Any person (including an organization, agency, or other entity, but excluding a beneficiary, as defined in subsection (i)(5) of this section) that

(1) knowingly presents or causes to be presented to an officer, employee, or agent of the United States, or any department of agency thereof, or any State agency (as defined in subsection (i)(1) of this section), a claim (as defined in subsection (i)(2) of this section) that the Secretary determines

(A) is for a medical or other item or service that the person knows or should know was not provided as claimed, including any person who engages in a pattern or practice of presenting or causing to be presented a claim for an item or service that is based on a code that the person knows or should know will result in a greater payment to the person than the code the person knows or should know is applicable to an item actually provided,

(B) is for a medical or other item or service and the person knows or should know the claim is false or fraudulent..."

27.     At all times relevant to this Complaint, the term "claim" was defined at 42 U.S.C. section 1320 a-7a(i)(2) as "an application for payments for items and services under a Federal health care program (as defined in section 1320a-7b(f) of this title)."

28.     The civil penalties to which violators are subject under 42 U.S.C. section 1320a-7a are a civil money penalty of not more than $10,000 for each item or service and $15,000 for each individual with respect to whom false or misleading information was given. Additionally, the violator is subject to an assessment of not more than three times the amount claimed for each item or service, and these penalties are in addition to any other penalties that may be prescribed by law.

29.	At all times relevant to this Complaint, pursuant to 31 U.S.C. section 3729(a)(1) any person who knowingly presented or caused to be presented to an officer of the United States Government a false or fraudulent claim for payment or approval is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 and an additional penalty of three (3) times the amount of damages suffered by the Government caused by the act of that person.

30.	At all times relevant to this Complaint, pursuant to 31 U.S.C. section 3729(a)(2), and person who knowingly makes, uses, or caused to be made or used a false record or statement to have a false or fraudulent claim paid by the United States Government is liable to the Government for sanctions as delineated in paragraph 28 of this Compliant.

31.	At all times relevant to this Complaint, pursuant to 31 U.S.C. section 3729(b), "knowing" and "knowingly" mean that a person with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information <u>and no proof or specific intent to defraud is required."</u> (Emphasis added.)

## FACTUAL SETTING FOR THE COMPLAINT

32.      Defendant, Independent Clinical Laboratory, Inc., dba Tampa Pathology Laboratory (TPL) is a private, Florida corporation which provides pathology services.  The principle of this business was, at all times relevant to this Complaint, Defendant Jose Suarez Hoyos, MD (SUAREZ, MD)

33.      Defendants TPL and SUAREZ MD employ individual employees in the practice, including Physician Pathologists.  Relator, ALAN FREEDMAN, began working for Defendants TPL and SUAREZ on or about August 2000 as a Physician Pathologist specializing in Dermatopathology.

34.      Defendant Steven Jay Wasserman, MD, is a physician dermatologist licensed to practice medicine in Florida. During all times relevant to this Complaint, he was the principle in the businesses Steven Jay Wasserman MD, PA, and Dermatology Institute of Venice, in Venice, Florida.

35.      Stephen Chiarello, MD, is a physician dermatologist licensed to practice medicine in Florida who owns and operates a dermatology practice in Port Charlotte, Florida.

36.      Alfredo Fernandez, MD, is a physician dermatologist who ones and operates a dermatology practice in Sarasota, Florida.

37.     Relator, Freedman is a licensed physician and a nationally board certified pathologist.  He specializes in the reading of pathology slides submitted by dermatologists for the purpose of diagnosing skin diseases, including but not limited to skin cancers.

38.     Relator was employed as a physician pathologist by TPL and SUAREZ from approximately August 2003 through July 2003.

39.     In approximately July of 2002, Relator, Freedman also created, Clearpath, a Florida Limited Liability Corporation, which provides pathology services.

40.     Between July of 2002 and July of 2003, Freedman continued to work in an Employee capacity for TPL and SUAREZ, and the company, Clearpath, had a separate contractual relationship to provide other pathology services to TPL that extends through approximately mid June of 2004.

41.     During the period of at least August 2000 through April 2004, by reasonable belief and information and through personal knowledge, Relator states that Defendants, WASSERMAN routinely sent biopsy specimens to TPL by way of TPL couriers, who collected specimens from WASSERMAN up to twice daily from Venice, Florida, and brought the specimens to TPL in Tampa.  The slides were then

technically prepared by SUAREZ, and then subjected to routine professional readings by Suarez MD or other TPL employee or contract physician pathologists.

42.      SUAREZ and TPL's readings included a complete and formal diagnosis by the TPL employee or contractor.

43.      Prior to September 2003, the reports produced by SUAREZ and TPL routinely included the name of the TPL employee or contract physician pathologist who actually performed the read and prepared the report.  After September 2003, Wasserman's name was placed at the bottom of the report with a space for him to sign.

44.      SUAREZ then billed Medicare for the *technical* component only of the pathology service, and sent the pathology report accompanied by the prepared and read slides back to WASSERMAN by courier.

45.      WASSERMAN then purported to read the prepared slides, but routinely made no changes to the TPL and SUAREZ diagnosis and report, signed his name to the report (containing the formally diagnosed and previously read slides) and submitted application for reimbursement to Medicare for having performed the professional component of the clinical service himself.

46.      Within two weeks of sending the prepared and read slides back to WASSERMAN, WASSERMAN returned the slides to TPL where they are stored.

47.      Suarez MD and other employed or contracted physician pathologists, including Relator, and TPL transcriptionists prepared the reports that were sent to WASSERMAN prior to WASSERMAN having received the slides or having read and prepared his own report.

48.      While an employee of SUAREZ, Relator personally read TPL's prepared WASSERMAN slides, produced the professional, clinical reports, and signed them out, prior to them being re-sent to WASSERMAN.

49.      At no time was Relator responsible for billing or billing services for either the technical or the professional component of the service  performed by SUAREZ or TPL.

50.      Upon reasonable belief and knowledge and personal experience, Relator states that WASSERMAN has routinely used the diagnosis and report furnished by SUAREZ as the exclusive basis for his bill to Medicare for the professional component, and that his billing is not, in fact, based upon his actually having done the work.

51.     WASSERMAN has routinely relied exclusively upon the readings, transcriptions and reporting preparation performed by SUAREZ, and essentially signs his name to the report, allowing him to claim responsibility for the production of the report, when he is only serving to file it for professional work actually done by others.

52.     The date on the completed report precedes the signing and submission of the report and the billing by WASSERMAN.

53.     Upon reasonable belief and knowledge, Relator also states that SUAREZ has maintained a similar relationship with CHIARELLO AND FERNANDEZ.

54.     At the time of Freedman's employment with TPL and SUAREZ, Freedman held a Medicare Provider and UPIN number from another state.  Upon reasonable belief, Related states that SUAREZ never used Freedman's UPIN number and never filed an 855R form which recognizes that another employee or contracting physician is performing services for which billings are being made to the Federal government.

55.     Freedman recently learned that all of his professional pathology services were being billed under the UPIN number of SUAREZ MD and/or TPL.

## DAMAGES

56.     The exact number of fraudulent claims set forth in this complaint is difficult to determine, as is the amount of money wrongfully received or retained as a result of the fraudulent claims.  On reasonable knowledge and belief, Relator believes that for the period of 3 September 2003 through 16 April 2004, WASSERMAN submitted 13,683 specimens to SUAREZ, for which SUAREZ prepared professional diagnoses, transcriptions and reports to be signed by WASSERMAN.  On some days, WASSERMAN submitted more than 200 specimens per day for processing and reporting by SUAREZ.

57.     Upon reasonable belief and knowledge, Relator also states that SUAREZ has maintained a similar relationship with CHIARELLO AND FERNANDEZ.

58.     Upon reasonable belief and personal knowledge, Relator states that for the period of at least August 2000 through April 2004, and for years before that period, WASSERMAN submitted at least 100 Medicare patient biopsies per day to SUAREZ, had both the technical and professional components performed by SUARREZ, but that WASSERMAN fraudulently billed for the professional component.  Each professional review portion of the pathology fee is approximately $40 (forty dollars) and the technical component is billed at approximately $50 (fifty dollars).  This represents approximately $2,000,000 (two million dollars) each year in fraudulently billed charges by WASSEREMAN and SUAREZ, through the scheme

with SUAREZ set forth above.  This represents approximately an amount in excess of $8,000,000 (eight million dollars) during the period 2000 to 2004.  Relator, by way of reasoned belief and knowledge, states that these activities and this scheme were practiced for years prior to 2000 by SUAREZ and WASSERMAN, and that they also involved a like and similar scheme with CHIARELLO AND FERNANDEZ.

59.      The United States Supreme Court has ruled that the Government need not actually suffer damages to support a claim under the False Claims Act (31 U.S.C.A section 3729-3733).  See Rex Trailer Company v. United States, 350 U.S. 148; 76 S.Ct. 219; 100 L.Ed. 149 (1956) citing United States ex rel. Marcus v. Hess, 41 F.Supp. 197, 218 *affirmed at* 317 U.S. 537; 63 S.Ct. 379; 87 L.Ed. 443 (1943). However, while not required by law, it is alleged in this Complaint that the Government suffered monetary damage by paying the fraudulent claims submitted by or caused to be submitted by Defendants.

## COUNT ONE
### [31 U.S.C. section 3729(a)(1), (a)(2) and (a)(7)]

60.      Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 59 of this Complaint as though full set forth herein.

61.      This is a civil action by Relator Alan Freedman, acting on behalf of and in the name of the UNITED STATES OF AMERICA, against Defendants for treble

damages and forfeitures under the False Claims Act, 31 U.S.C. sections 3729-3732 as amended.

**62.**      Upon information and belief, through the acts described above, Defendants knowingly presenting or knowingly caused its agents and employees to present to the United States Government false and fraudulent claims, records and statements in order to obtain reimbursement for health care services provided under Medicare.

**63.**      Defendants knowingly created, used and/or caused to created or used false records or statements in order to have false and fraudulent claims approved and paid by the United States Government.

**64.**      By reason of Defendants' conduct, the United States Government has been damaged by a significant loss of funds, the exact amount of which is unknown at this time.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants, and each of them as follows:

1.  That the Court enters judgment against Defendants in an amount equal to three times the amount of damages the United States Government sustained as a result of

Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of 31 U.S.C. section 3729 and 42 U.S.C. section 1320 a-7a, and a civil penalty against each Defendant of $15,000 for each individual with respect to whom false or misleading information was given pursuant to 42 U.S.C. section 1320a-7a;

2.   That Relator Freedman is awarded all costs and expenses of this action, including attorneys' fees; and

3.   That the UNITED STATES OF AMERICA and Relator Freedman receives all such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

A jury trial is requested in this case.

Respectfully submitted

Jay Wolfson
Jay Wolfson, Attorney and Counselor at Law, PA
13201 Chancery Place
Tampa, Florida 33613
Florida Bar Number 4375
813-265-2250
Fax: 813-963-0791
Attorney for *Qui Tam* Relator

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Complaint was served by United States Mail this 26th day of April 2004 upon the following:

Honorable Paul I. Perez
United States Attorney
Middle District of Florida
500 Zack Street, Room 400
Tampa, Florida 33602

Honorable John Ashcroft
Attorney General of the United States
U.S. Department of Justice
10th and Constitution Avenue, N.W.
Washington, D.C., 20530

Jay Wolfson
Jay Wolfson, Attorney and Counselor at Law, PA
13201 Chancery Place
Tampa, Florida 33613
Florida Bar Number 4375
813-265-2250
Fax: 813-963-0791
Attorney for *Qui Tam* Relator